UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA, | MEMORANDUM |
| | AND |
| Plaintiff, | ORDER |
| - against - | 97-CR-70 (TCP) |
| VINCENT RICCIUTI, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PLATT, District Judge.

Defendant Vincent Ricciuti moves to recuse the undersigned pursuant to Title 28 U.S.C. § 455(a).

The Defendant, in his motion, alleges the appearance of partiality on the part of this Court. The question of partiality, it is alleged, arises from the fact that at the time of the Defendant's arraignment in March 1997, his current attorney, Mr. Andrew C. DeVore, served as a law clerk to the undersigned.

For the following reasons, Defendant's motion is **DENIED**.

**Background**

This Court arraigned Defendant Ricciuti on March 12, 1997. On that date, Defendant pled guilty to one count of conspiracy to distribute and possession with the intent to distribute, marijuana, in violation of 21 U.S.C. §

841(b)(1)(c). After his arraignment, Defendant agreed to cooperate with the Government.

On June 24, 2004, this Court sentenced Defendant to six years imprisonment and three years of supervised release. Following his sentencing hearing, Defendant retained the law firm Manatt, Phelps & Phillips, LLP. Mr. DeVore, a partner at the firm, has been the principal attorney representing the Defendant since in or about July 2004.

Mr. DeVore is also a former law clerk who served with this Court from September, 1996 through August, 1997. It was during his tenure as a law clerk that this Court arraigned and received Defendant Ricciuti's guilty plea.

The Defendant began serving his sentence on August 24, 2004 at the Federal Correctional Institute located at Fort Dix, New Jersey.

The Defendant appealed the sentence imposed on him by this Court to the Second Circuit Court of Appeals on the ground that the sentence violated his Sixth Amendment right to a trial by jury. Neither Mr. DeVore nor any one at his law firm apparently made any effort to determine whether Mr. DeVore's clerkship term overlapped the Defendant's arraignment and guilty plea prior to or during the Defendant's appeal and, in any event, did not disclose this fact to the Court of Appeals in their appellate papers. The Court of Appeals issued a remand order on April 21, 2005, mandating that this Court reevaluate

Defendant's sentence in light of the United States Supreme Court's decisions in *Blakely v. Washington*, 124 S.Ct 2531 (2004), and *United States v. Booker*, 125 S.Ct. 738 (2005), and the Court of Appeals's decision in *United States v. Crosby*, 397 F.3d 103 (2005).

Pursuant to this mandate, this Court scheduled a conference on May 13, 2005 for the purpose of hearing oral argument on the re-sentencing issue. Shortly after doing so, out of an excess of caution, this Court did check to determine if the Defendant's new counsel, Mr. DeVore, was one of this Court's clerks when the case arrived. Upon discovering that Mr. DeVore served as a judicial law clerk at the time the Defendant was arraigned and pled guilty to the crimes for which the correlative sentence he now contests, this Court adjourned the conference and informed Mr. DeVore that he should withdraw from representing the Defendant.

**Analysis**

What better way is there to get rid of a judge on a case than to retain a former law clerk either directly or through a law firm to represent you and then move to recuse the judge from the case; i.e., create the impropriety and then move to recuse because of the impropriety you created. There is no question that this occurred in the case at bar, inadvertently or otherwise.

The fact is that Mr. DeVore was chosen and worked as a law clerk for the undersigned from September, 1996 through August, 1997. During this period the Defendant was arrested, indicted, and arraigned before the undersigned on charges of conspiracy to distribute and possession with the intent to distribute marijuana.

During the following six and a half years, the Defendant cooperated with the Government and was then sentenced by the undersigned on June 24, 2004 to six years imprisonment plus three years of supervised release.

Following his sentence, the Defendant retained the firm of Manatt, Phelps & Phillips, LLP in July, 2004 to represent him on appeal. At that time, Mr. DeVore, a member of the firm since at least July 2004 and a partner as of February, 2005, became his principal attorney.[1]

Neither Mr. DeVore nor any attorney member of the firm apparently attempted to verify the fact that this client was arraigned on his initial indictment before Judge Platt and that Mr. DeVore was one of the Judge's law clerks at that time. Moreover, it is apparent that neither Mr. DeVore nor his firm informed the Judges of the Court of Appeals that this relationship existed.

---

[1] The website of Manatt, Phelps & Phillips currently advertises that Mr. DeVore served as a law clerk to the undersigned from 1996-1997.
http://www.manatt.com/showresume.asp?id=780

When the case was remanded to this Court, none of them checked or called to this Court's attention that this conflict existed. It was only when this Court took the trouble to research the fact that it was discovered that at the very initial assignment of this case, its indictment and so forth. It was this Court on its own initiative who found the basis for this conflict and advised Mr. DeVore that he should withdraw.

This motion followed.

This Defendant has been before this Court since March 12, 1997 - eight years and four months ago; in five months of which Mr. DeVore was a law clerk.

For the Court to recuse itself for his former law clerk's law firm's failure to check before accepting a representation from a criminal defendant on an appeal which could have no basis but for the *Booker* case, is nothing short of an open invitation to all defendants to retain former law clerks to represent them in removing the case from the sentencing judge and obtain new judges. "Judge Shopping" is the term the most commonly used to describe this process and this Court does not wish to be a part of it.

The Defendant requests recusal on the ground that the undersigned should recuse himself in order to avoid any appearance of impartiality. Any appearance of impartiality that may result from Mr. DeVore's representation of

this Defendant is for the Defendant to claim and benefit from. "Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice." *United States v. Martorano*, No. 82-11, 1987 U.S. Dist. LEXIS 6225, *9 (E. D. Pa. July 13, 1987). This is precisely the reason why Mr. DeVore must withdraw as counsel. His appearance as counsel for the Defendant has created a conflict - again, inadvertently or otherwise - for which the Defendant now seeks to exploit. Although a judge has a duty to investigate and assess whether an appearance of partiality exists, a judge must also ensure that a party is not using the appearance issue as a way to circumvent the judge's anticipated ruling. *Id.,* at *9.

   The Defendant maintains that the appropriate remedy when the appearance of a former law clerk on a matter calls into question the impartiality of the judge presiding over the case, is for the judge to recuse himself or herself. (Def.'s Mem. at 5.) The Defendant cites *Fredonia Broadcasting Corp. v. RCA Corp.*, 569 F.2d 251 (5th Cir. 1978) in support of this remedy, but the facts and holding of that case are not only dissimilar to the case at bar, they support this Court's view that Mr. DeVore should withdraw as counsel. In *Fredonia*, the Fifth Circuit reversed a district judge's decision denying recusal where the district judge had learned that the plaintiff's law firm employed one of his former law clerks to work on a matter presently before the judge. *Id.* Opposing counsel

brought a motion requesting that either the judge recuse himself or disqualify plaintiff's counsel. *Id*. at 254. The Fifth Circuit noted that the alleged impropriety arose because the law clerk worked on the case during his clerkship. *Id.* at 255. The district judge, however, refused to remove himself or disqualify plaintiff's counsel. *Id*. In fact, the court held that the judge "seemed to countenance the notion that the law clerk could improperly use the specific knowledge gained from working with him on this particular case." *Id.* The court ruled that the district judge erred because the appearance of impropriety had already been established. *Id.* That is, having been made aware of the appearance of impropriety, the judge did nothing to rectify the situation. This Court, on the other hand, attempted to rectify the conflict by requesting Defendant's counsel to withdraw as soon as the potential conflict of interest came to light.

The Defendant also points to language in *Fredonia* where the Fifth Circuit rejected the idea that the plaintiff's counsel should be disqualified because "the disqualification of counsel is a drastic measure and could conceivably have due process implications." (Def.'s Mem. at 5.) The Defendant does not cite the complete sentence, which in its entirety reads as follows:

> Disqualification of counsel is a drastic measure and conceivably could have due process implications, *especially when counsel has served throughout proceedings as involved and lengthy as these and the client's investment in legal representation is substantial.*

-7-

*Fredonia*, 569 F.2d at 257 (emphasis added).

Disqualification of counsel *is* a drastic measure; but in this case, disqualification is warranted. Defendant's counsel was only recently retained and has not appeared in any proceeding before this Court. Furthermore, it has not been shown that the Defendant has made a substantial investment as to Mr. DeVore and his firm.

At this juncture, the controversy is not about the impartiality of this Court. The proper way to view this controversy is to begin with the premise that the former law clerk should have known that he had a potential conflict of interest at the time he accepted representation of his client unbeknownst to this Court. *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 989 (9th Cir. 2000) ("The law clerk is the one person who is always sure to know of a conflict.").

The Second Circuit Court of Appeals addressed the issue of whether a judge should recuse himself or herself when counsel joins a case in progress, when it is known or at least easily ascertainable that by appearing in the matter, counsel will likely create a conflict of interest between himself and the judge. In *In re FCC*, 208 F.3d 137, 139 (2d Cir. 2000), the court *sua sponte* rejected an appearance by a law firm as special appellate counsel. The court

decided that the appearance of the law firm after the appellate panel had been announced would raise a question as to the ability of one panel member to continue to serving on the panel as he had once been a partner at the disqualified firm (and said in language applicable here):

> Once the members of a panel assigned to hear an appeal become known or knowable, counsel thereafter retained to appear in that matter should consider whether appearing might cause the recusal of a member of the panel . . . It is clear . . . that tactical abuse becomes possible if a lawyer's appearance can influence the recusal of a judge known to be on a panel. Litigants might retain new counsel for rehearing for the very purpose of disqualifying a judge who ruled against them. As between a judge already assigned to a panel, and a lawyer who thereafter appears in circumstances where the appearance might cause an assigned judge to be recused, *the lawyer will go and the judge will stay*.

*In re FCC*, 208 F.3d at 139 (emphasis added); *see also Hunt v. American Bank & Trust Co.*, 783 F.2d 1011, 1016 (11th Cir. 1986) ("If a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified."). The court further explained that its decision stemmed from the need to preserve the "neutral and random assignment" of judges to cases and because such practice applies the "inherent power of this Court to manage and control its docket." 208 F.3d at 139 *quoting Johnson v. Morgenthau*, 160 F.3d 897, 899 (2d Cir. 1998).

In this case, had the undersigned not raised the conflict of interest issue *sua sponte*, both the Defendant and the Government could have later sought recusal. Moreover, had the matter developed further, both Parties might have

-9-

sought to overturn this Court's decision on Defendant's re-sentencing. Parties should not be permitted to plant obvious sources of ethical objections or grounds for appeal. "The recusal provision was intended to be a shield, not a sword." *Bivens Gardens Office Bldg. v. Barnett Banks, Inc.*, 140 F.3d 898, 913 (11th Cir. 1998).

In *Bivens*, plaintiffs claimed - after receiving an unfavorable verdict - that the trial judge had an impermissible conflict of interest on the ground that defendants' lead counsel had once served as the trial judge's law clerk. 140 F.3d at 913. Furthermore, plaintiffs alleged that the case was one for which the former law clerk was responsible. *Id.* Although the Eleventh Circuit acknowledged that these facts were true, the court nevertheless decided not to rule on the merits of the plaintiffs' motion. *Id.* Instead the court ruled that the plaintiffs had been aware of this conflict prior to trial, but strategically waited to raise the issue until after the trial judge rendered an unfavorable ruling. *Id.* By waiting as they did, the plaintiffs waived the issue. *Id.*

This is exactly the scenario this Court wishes to avoid.[2]

---

2   In *Ghee v. Artuz*, 285 F. Supp. 2d 328 (E.D.N.Y. 2003), United States District Judge Block declined to disqualify a former law clerk from representing a client in a *habeas* petition. The issue in that case was *when* an attorney may appear before the judge for whom he or she clerked. *Id.* at 329. Unlike in this case, the former law clerk's clerkship ended before Judge Block was assigned to hear the *habeas* petition. *Id.*

Finally, although the issue has not been raised by the Defendant, denying the Defendant's motion to recuse and disqualifying his current counsel should not result in any undue hardship on either the Defendant or his counsel. *See In re FCC*, 208 F.3d at 140. Certainly this Court will allow adequate time for the Defendant to obtain new counsel. The Defendant has been before this Court since 1997, whereas Mr. DeVore and Manatt, Phelps were only recently retained. Defendant Ricciuti has yet to appear before this Court on the re-sentencing matter. Moreover, as to his present counsel, any hardship is of their own making. "[W]e expect that lawyers will take pains to avoid appearing in any case in which their appearance may cause disqualifications of the judge assigned to the case." *In re FCC*, 208 F.3d at 140. There is no reason to doubt that had Mr. DeVore or his law firm conducted even a modicum of due diligence before agreeing to represent the Defendant,[3] they would have recognized the potential conflict of interest and informed the Court of Appeals and this Court. Failing to do so or worse (and

---

This Court is unaware of any rule in the Second Circuit or the Eastern District of New York governing whether or not a law clerk may represent a client on a matter that was before the judge during the clerkship. Nonetheless, as the U. S. Supreme Court and some circuit courts do prohibit such conduct (*see* Rules of the United States Supreme Court, Rule 7; *Fredonia*, 569 F.2d at 255-56), it is clear that the Defendant's decision to retain Manatt, Phelps and Mr. DeVore set off an ethical trip wire.

[3] The case docket information would have been a good start ("97-CR-70 (TCP)").

surely we hope not the case here), purposefully creating the conflict for strategic advantage, will not serve as a basis to recuse this Court.

**Conclusion**

Title 28 United States Code, Section 455(a) is an appropriate and necessary tool for litigants to invoke against alleged or actual impartiality or impropriety in order to preserve a level playing field; self-created conflicts are a different matter altogether.

Defendant's motion for recusal is **DENIED**. The Defendant

should seek new counsel as soon as practicable.

**SO ORDERED**.

_/S/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
July 15, 2005